**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Juan Eduardo Martinez Arguello,

Petitioner,

v.

Todd M Lyons, et al.,

Respondents.

No. CV-26-02078-PHX-SPL (DMF)

**ORDER**

Petitioner Juan Eduardo Martinez Arguello, who is proceeding pro se, filed this action under 28 U.S.C. § 2241 challenging his immigration detention. (Doc. 1.) He later lodged a First Amended Petition correcting the date on which his current detention began. (Doc. 20.) The Court will grant Petitioner's request for leave to amend. After the Ninth Circuit decided *Padilla v. U.S. Immigr. & Customs Enf't*, --- F.4th ----, 2026 WL 2822044 (9th Cir. Sept. 21, 2026), the Court ordered supplemental briefing. (Doc. 25.) Respondents argue that the First Amended Petition should be denied based in part on the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). (Doc. 26.) Petitioner filed a supplemental reply. (Doc. 27.) For the reasons below, the Court grants the Petition.

## I. Background

Petitioner, a native and citizen of Venezuela, presented himself at or near the Nogales, Arizona port of entry on December 16, 2023. (Doc. 20 at 3-4, ¶¶ 5, 11; Doc. 26 at 2.) The Department of Homeland Security ("DHS") classified him as an arriving

noncitizen and paroled him into the United States, issuing him a Form I-94 with an admit-until date of April 18, 2025. (Doc. 20 at 4, ¶ 11; Doc. 26 at 1-2.) Petitioner lived in the United States, obtained employment authorization, and appeared and participated in his removal proceedings. (Doc. 20 at 4 ¶¶ 12-13.) On May 2, 2025, an immigration judge ordered him removed. (*Id.* ¶ 14; Doc. 26 at 2.) Petitioner timely appealed, and his appeal has been pending before the Board of Immigration Appeals ("BIA") since May 30, 2025. (Doc. 20 at 4 ¶ 14; Doc. 26 at 2.)

In February 2026, after Petitioner had lived in the United States for more than two years, Immigration and Customs Enforcement re-detained him. (Doc. 20 at 4 ¶ 16.) He is detained at the Eloy Federal Contract Facility. (*Id.* at 2 ¶ 1.) On March 18, 2026, Petitioner requested a custody redetermination. (*Id.* at 5 ¶ 18.) The immigration judge denied the request for lack of jurisdiction, stating: "No jurisdiction. Respondent is an arriving alien." (*Id.*) The immigration judge heard no evidence and made no findings concerning danger, flight risk, or alternatives to detention. (*Id.* ¶ 19.) An immigration judge again declined jurisdiction on September 2, 2026. (Doc. 27 at 7.) Petitioner alleges that he has no criminal history, has submitted sworn letters of support, and has a United States citizen sponsor who has offered housing and financial support, and he states that he is willing to comply with reporting, electronic monitoring, and other conditions of release. (Doc. 20 at 5, ¶¶ 20-23.) He seeks release or, alternatively, an individualized bond hearing within seven days at which the government must justify his detention by clear and convincing evidence. (*Id.* at 11-12; Doc. 27 at 9-10.)

## II. Discussion

### A. Statutory Framework

Petitioner does not challenge his removal order or the BIA's adjudication of his appeal; he challenges only his continued detention without an individualized custody hearing. (Doc. 27 at 2.) Because his BIA appeal remains pending, his removal order is not administratively final, *see* 8 C.F.R. § 1241.1(a).

The parties dispute the statutory basis for Petitioner's detention. Respondents

contend that because Petitioner presented at a port of entry and was paroled, he remains an arriving noncitizen detained under 8 U.S.C. § 1225(b)(2)(A), which does not provide for a bond hearing. (Doc. 26 at 2, 6); *see Jennings v. Rodriguez*, 583 U.S. 281, 297-302 (2018). Petitioner contends that because he was re-detained in the interior after living in the United States for more than two years, his detention is governed instead by 8 U.S.C. § 1226(a). (Doc. 20 at 6-7, ¶¶ 27-37; Doc. 27 at 8.) The Court need not resolve that dispute. As explained below, even assuming that § 1225(b)(2)(A) authorizes Petitioner's detention, as Respondents contend, the Due Process Clause requires that he receive an individualized hearing before that detention may continue.

**B. *Thuraissigiam* Does Not Foreclose Petitioner's Due Process Claim**

Respondents argue that Petitioner, as an arriving noncitizen who presented at a port of entry, falls "squarely within the ambit of" *Thuraissigiam* and the entry fiction doctrine, and therefore "has no due process rights beyond what the statute allows." (Doc. 26 at 2-3.) In Respondents' view, arriving noncitizens "do not acquire a liberty interest if released into the United States on parole" and are not entitled to bond hearings. (*Id.* at 6); *see Thuraissigiam*, 591 U.S. at 107 ("[T]he Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. . . . [Thuraissigiam] therefore has no entitlement to procedural rights other than those afforded by statute.").

In *Padilla*, the Ninth Circuit rejected the government's argument that *Thuraissigiam* forecloses due process rights, beyond those Congress grants by statute, for noncitizens who entered the country unlawfully. 2026 WL 2822044, at *10-11. The Ninth Circuit wrote that "[t]he government's boundless proposition is nowhere to be found in *Thuraissigiam*," *id.* at *14, and emphasized that "[t]he right to due process is conferred, not by legislative grace, but by constitutional guarantee," *id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (citation modified)). It held that *Thuraissigiam's* due process limits apply only to noncitizens "at the threshold of initial entry." *Id.* at *11 (quoting

*Thuraissigiam*, 591 U.S. at 107).

That holding does not by itself resolve this case. The *Padilla* class was limited to noncitizens who entered without inspection, so it "exclude[d] individuals encountered at a point of entry." *Id.* at *13. Petitioner, by contrast, presented himself at a port of entry and was paroled, and *Padilla* recognized that the entry fiction still "encompasses those apprehended at or very near a point of entry and then either paroled into the United States or detained in the United States pending a determination of their admissibility." *Id.*

Respondents likewise point to authority treating noncitizens paroled under 8 U.S.C. § 1182(d)(5)(A) as not having effected an entry. (Doc. 26 at 3 n.1 (citing *Lopez-Sorto v. Garland*, 103 F.4th 242, 252 (4th Cir. 2024), and *Vazquez Romero v. Garland*, 999 F.3d 656, 661 (9th Cir. 2021)).) Petitioner responds that after living in the interior for more than two years and being re-detained there, he is no longer at the threshold of initial entry. (Doc. 27 at 3.) The Court need not resolve that question and assumes, for purposes of this Order, that the entry fiction applies to Petitioner. But *Padilla* was precise about what the entry fiction does and what it does not do. Such individuals are "treated as if stopped at the border" only "with respect to certain legal rights," and it is their "due process rights regarding admission" that are limited to "[w]hatever the procedure authorized by Congress is." *Padilla*, 2026 WL 2822044, at *13 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 215 (1953)). The entry fiction therefore defines the process Petitioner is due in determining whether he may be admitted. It does not answer whether the government may hold him in prolonged detention, without any individualized hearing, while that determination is made.

*Padilla* answered that separate question as well. In Section II.B.2 of its opinion, the court held that *Thuraissigiam* does not govern due process challenges to detention because "*Thuraissigiam* was an admission, not a detention, case." *Id.* at *19. The court explained that "[a]dmission and detention occupy fundamentally different positions in our legal order," and that "[u]nlike the political branches' plenary power over admission, the principle that the government cannot arbitrarily detain people, including noncitizens, has

been a central tenet of British and American legal traditions since the thirteenth century." *Id.* at *16 (footnote omitted). Thuraissigiam himself "made no mention of release from custody," and the Supreme Court held only that a noncitizen in his position "has only those rights regarding admission that Congress has provided by statute." *Id.* (quoting *Thuraissigiam*, 591 U.S. at 115, 140) (emphasis omitted). Judge Friedland did not join Section II.B.2, reasoning that the threshold holding was sufficient to resolve the certified questions. *Id.* at *19 (Friedland, J., concurring in part). But that section was joined by a majority of the panel, and the majority expressly relied on it as an independent basis for its holding. *Id.* at *19 ("For that reason, as well as because it was specifically limited to noncitizens at the 'threshold of initial entry,' it has no application here . . . ."). It is therefore binding in this circuit. *See Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam).

District courts in this circuit have since applied *Padilla's* distinction between admission and detention, including to noncitizens whose status regarding admission is that of an arriving noncitizen. *Kleber Vasquez v. Hernandez* is particularly instructive. There, the court addressed a noncitizen detained after the expiration of her § 1182(d)(5)(A) parole and explained that "while [the petitioner's] legal status regarding admission reverted to that of an arriving noncitizen once her parole expired, the Due Process clause continued to require constitutionally adequate procedures surrounding her detention." No. 2:26-cv-02873-TMC, 2026 WL 2936770, at *2 (W.D. Wash. Sept. 30, 2026). *See also Marquez v. Warden, Desert View Facility*, No. 5:26-cv-05368-MBK, 2026 WL 2948874, at *4 (C.D. Cal. Oct. 1, 2026) (emphasizing *Padilla's* recognition that "the government cannot arbitrarily detain people, including noncitizens" (citation modified)); *Alarcon Bayas v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-08333-DAD-JDP (HC), 2026 WL 3136201, at *1 (E.D. Cal. Oct. 20, 2026) (concluding that *Padilla* confines *Thuraissigiam's* due process limitation to admission and does not affect the process required to detain a noncitizen). Like the petitioner in *Kleber Vasquez*, Petitioner was paroled into the United States and was re-detained nearly a year after the admit-until date on his Form I-94 had

passed. (Doc. 20 at 4, ¶¶ 11, 16.)

*Padilla* is binding, and the Court must apply it here. Petitioner does not challenge the procedures governing his admission; he challenges his continued detention, now approximately nine months, without any individualized hearing. (Doc. 27 at 2.) Whatever limits the entry fiction places on his admission-related rights, it does not strip him of the protection against arbitrary detention that the Due Process Clause guarantees. Respondents read *Padilla* to have "affirmed" that noncitizens apprehended at a port of entry have only the rights Congress provides by statute, including with respect to detention, and they emphasize that *Padilla* did not "conclude or even suggest" that an arriving noncitizen seeking release or a bond hearing is entitled to more. (Doc. 26 at 5-6.) But Respondents cite no passage of *Padilla* so holding, and *Padilla's* holding that "*Thuraissigiam* was an admission, not a detention, case," 2026 WL 2822044, at *19, does not depend on how a noncitizen came into the country. To the contrary, *Padilla* tied the entry fiction's limits specifically to rights "regarding admission." *Id.* at *13.

Nor does *Mezei* compel a different result. *Mezei* concerned a noncitizen who had been permanently excluded, without a hearing, on national-security grounds, and who remained on Ellis Island because no other country would accept him. 345 U.S. at 208-09. The Court held that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Id.* at 212 (citation modified). As *Padilla* explains, that principle defines the "due process rights regarding admission" of those on the threshold of entry. *Padilla*, 2026 WL 2822044, at *13. Petitioner, by contrast, has not been finally denied entry. Although an immigration judge ordered him removed, that order is on appeal and is not administratively final, *see* 8 C.F.R. § 1241.1(a), and nothing in the record suggests that he has been excluded on national-security grounds. *Mezei* does not hold that a noncitizen whose admissibility remains under review may be held for months, with no end in sight, without any individualized determination that his detention is warranted.

Respondents' other authorities are to the same effect. In *Kaplan v. Tod*, the question

was whether a noncitizen who had been excluded at Ellis Island, and later released into the care of a relief organization pending deportation, acquired citizenship through her father's naturalization. 267 U.S. 228, 229-30 (1925). The Court held that she had not, because she "was still in theory of law at the boundary line and had gained no foothold in the United States." *Id.* at 230. And in *Nishimura Ekiu v. United States*, the Court held that a noncitizen's temporary placement on shore, pending a decision on her right to land, left her in the same position "so far as regarded her right to land in the United States" as if she had remained aboard the ship that brought her. 142 U.S. 651, 661 (1892). Respondents' quotation of that passage omits the qualifying phrase. (*See* Doc. 26 at 5.) Both cases addressed the legal effect of a noncitizen's physical presence on her admission or status, which is the domain to which *Padilla* confines the entry fiction. Neither held that a noncitizen whose admissibility remains under review may be detained for an extended period without any individualized determination that detention is warranted.

### C. The *Mathews* Factors Require an Individualized Bond Hearing

Because *Thuraissigiam* does not foreclose Petitioner's claim, the Court turns to what process is due. *Padilla* did not decide that question. *Padilla*, 2026 WL 2822044, at *19 n.16. As the Ninth Circuit did in *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022), the Court assumes without deciding that the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), governs. That test weighs three factors: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards; and (3) the government's interest, including the burdens additional procedures would entail. *Mathews*, 424 U.S. at 335.

Respondents assert, citing *Jennings*, that detention under § 1225(b)(2)(A) lasts "throughout the completion of applicable proceedings" and "is not unconstitutionally indefinite." (Doc. 26 at 6 n.3 (citing *Jennings*, 583 U.S. at 302).) But *Jennings* did not hold that such detention is constitutional. The Supreme Court expressly did not decide whether prolonged detention under § 1225(b) without a hearing is constitutional, and it remanded that question. 583 U.S. at 312. Nor are due process concerns limited to detention that is

literally indefinite. The question is whether the procedures afforded are adequate given the length and circumstances of the deprivation, which is what the *Mathews* test measures.

First, Petitioner's interest in freedom from detention is substantial. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). That interest carries particular weight here. Before his re-detention, Petitioner lived in the United States for more than two years, obtained employment authorization, and appeared and participated in his removal proceedings. (Doc. 20 at 4, ¶¶ 12-13.) He has now been detained for approximately nine months. (*Id.* ¶ 16.) Although that period is shorter than the fourteen months of post-hearing detention at issue in *Rodriguez Diaz*, 53 F.4th at 1206-07, the detainee there received an individualized bond hearing and could seek another if his circumstances changed. *Cf. id.* at 1207. Petitioner has never received such a hearing and has no means of obtaining one. The end of his detention is also not in sight. His BIA appeal has been pending for over seventeen months, and nothing in the record indicates when it will be decided. (Doc. 20 at 4, ¶ 14; Doc. 26 at 2.) Petitioner further alleges that his detention is causing continuing emotional and psychological harm. (Doc. 20 at 6, ¶ 26.) This factor weighs heavily in Petitioner's favor.

Second, the risk of erroneous deprivation is high, and the probable value of additional safeguards is substantial. In approximately nine months of detention, no neutral decisionmaker has ever assessed whether Petitioner's detention is necessary to prevent flight or protect the community. Twice, an immigration judge declined to conduct a custody redetermination, stating only that Petitioner is an arriving noncitizen, and heard no evidence on danger, flight risk, or alternatives to detention. (Doc. 20 at 5, ¶¶ 18-19; Doc. 27 at 7.) Under Respondents' view of the statute, Petitioner is ineligible for a custody redetermination before an immigration judge, *see* 8 C.F.R. § 1003.19(h)(2)(i)(B); *Jennings*, 583 U.S. at 297-300, and his only path to release is parole under § 1182(d)(5)(A), a discretionary determination made by the same agency that detains him and not reviewable

by an immigration judge, *see Jennings*, 583 U.S. at 300; 8 C.F.R. § 212.5(b). That stands in stark contrast to the procedures the Ninth Circuit found sufficient in *Rodriguez Diaz*, where the detainee received a bond hearing before an immigration judge, could appeal to the BIA, could seek a new hearing upon changed circumstances, and could seek further review in federal court. 53 F.4th at 1209-10. Petitioner has received none of those safeguards. And the risk of error is heightened here because the record contains information bearing on danger and flight risk that no decisionmaker has ever weighed: Petitioner has no criminal history, appeared for his removal proceedings during more than two years at liberty, and has offered a United States citizen sponsor, a release plan, and sworn letters of support. (Doc. 20 at 4-5, ¶¶ 13, 20-23.) An individualized hearing before a neutral decisionmaker would substantially reduce the risk that he is detained when detention serves no legitimate purpose.

Third, the government has legitimate and significant interests in enforcing immigration laws, ensuring that noncitizens appear for their proceedings, and protecting the public. *Rodriguez Diaz*, 53 F.4th at 1208. But the relevant question under *Mathews* is the government's interest in the challenged procedure—here, continued detention without any individualized assessment—and the burden that additional process would impose. The government has no legitimate interest in detaining a noncitizen who poses no danger and whose risk of flight can be addressed through bond or alternative conditions. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). A bond hearing serves, rather than undermines, the government's interests by identifying those noncitizens whose detention is actually warranted. The administrative burden of such a hearing is modest, as immigration judges routinely conduct custody hearings for noncitizens detained under § 1226(a). *See* 8 C.F.R. § 1003.19. Respondents rely solely on Petitioner's classification as an arriving noncitizen (Doc. 26 at 2, 6); they do not identify any individualized reason for his detention or any change in circumstances that prompted his re-detention after more than two years in the community. And the record contains no individualized finding that Petitioner poses a danger or flight risk, because no such inquiry has ever been made.

The first two factors weigh in Petitioner's favor, and the government's legitimate interests can be fully protected through an individualized hearing. Due process therefore requires that Petitioner receive such a hearing before his detention may continue. Because the Court concludes that relief is warranted under *Mathews*, it does not separately address Petitioner's arguments under the factors set out in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118-20 (W.D. Wash. 2019). (*See* Doc. 20 at 8-9, ¶¶ 40-42; Doc. 27 at 7.) And because Petitioner is entitled to relief on this ground, the Court does not reach his statutory claim or his remaining arguments.

**D. Procedures at the Bond Hearing**

The Court agrees with Petitioner that the government must bear the burden of justifying his continued detention by clear and convincing evidence. *See Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011). *Rodriguez Diaz* upheld placing the burden on the detainee under § 1226(a), but it did so in light of the initial hearing and multiple layers of review that statutory scheme provides, 53 F.4th at 1209-13, none of which has been available to Petitioner. And because a bond set without regard to a detainee's financial circumstances can result in detention untethered to any legitimate purpose, the immigration judge must consider Petitioner's ability to pay and alternatives to detention in setting any bond. *See Hernandez*, 872 F.3d at 990-91. Finally, as Petitioner requests, the hearing must be recorded so that a contemporaneous record is available for any further review. (Doc. 20 at 11; Doc. 27 at 9); *see Singh*, 638 F.3d at 1208.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Leave to File First Amended Petition (Doc. 19) is **granted**. The Clerk of Court must file the lodged First Amended Petition (Doc. 20).

**IT IS FURTHER ORDERED that** the First Amended Petition for Writ of Habeas Corpus (Doc. 20) is **granted**. Within seven (7) days of this Order, Respondents must either release Petitioner or provide him an individualized bond hearing before an immigration judge, notwithstanding 8 C.F.R. § 1003.19(h)(2)(i)(B). At that hearing, the government must bear the burden of proving by clear and convincing evidence that Petitioner poses a

danger to the community or a risk of flight that cannot be reasonably mitigated by alternatives to detention. The hearing must be recorded. In setting any bond, the immigration judge must consider Petitioner's ability to pay and alternative conditions of release. If the government does not meet its burden, Petitioner must be released.

**IT IS FURTHER ORDERED** that Respondents must file a notice of compliance within seven (7) days after the bond hearing or Petitioner's release, whichever occurs first.

**IT IS FURTHER ORDERED** that any remaining pending motions are denied as moot. The Clerk of Court must enter judgment accordingly and close this case.

Dated this 12th day of November, 2026.

Honorable Steven P. Logan
United States District Judge